## Breading, Garnishee, *versus* Siegworth.

A verdict and judgment in favour of a garnishee, in an attachment execution, is not a bar to a recovery by another creditor against the same person, as garnishee of the same defendant.

An attachment execution is not exclusively a proceeding *in rem*, but also a proceeding personally against the garnishee.

ERROR to the District Court of *Allegheny county*.

This was an execution attachment at the suit of John Siegworth against John Horner, with notice to James E. Breading, garnishee, in which the parties agreed upon a case stated presenting the following facts:—

That on the 12th of December, 1853, the plaintiff caused to be issued out of the said District Court a writ, commonly called an attachment execution, reciting that on the 15th day of December, 1853, he had recovered against John Horner a judgment of $564.09, and costs; and also reciting that it remained unpaid, and that James E. Breading was indebted to said Horner in certain sums of money, which were liable to be attached and levied, in satisfaction of said debt, and commanding the sheriff to attach the same. That on the 12th of December, A. D. 1853, the said writ was returned served on said James E. Breading, and N. E. I. as to said John Horner; that the said Breading pleaded *nulla bona* to said writ, upon which issue said cause or proceeding now stands; that heretofore, to wit, on the 29th day of March, A. D. 1853, Franklin and William M. Faber caused to be issued from said court a writ, commonly called an execution attachment, reciting therein that the plaintiffs therein had, on the 18th February, 1853, recovered against John Horner, impleaded with James Eaton, the sum of $911.21, and costs of suit. And also alleging that the said debt remains due and unpaid, and that James E. Breading has in his possession goods and chattels, rights and

[Breading, Garnishee, *v.* Siegworth.]

credits, money and effects, which are liable to be attached and levied, in satisfaction of the said judgment. And commanding the sheriff to attach the same, &c.

Which said writ was returned, served on said 29th day of March, A. D. 1853, by copy on said James E. Breading, and summoning him as garnishee, and also by copy on John Horner, April 1, 1853; that said Breading, garnishee, pleaded to said last-mentioned writ *nulla bona;* that afterwards, to wit, on the 16th day of February, A. D. 1854, the said last-mentioned cause, wherein the said Fabers were plaintiffs, and the said James E. Breading, garnishee, was defendant, on the said issue joined between said parties as aforesaid, was, upon evidence and arguments of counsel, submitted to a jury in said court, who, on the day last aforesaid, returned their verdict for the defendant, the said James E. Breading, garnishee, that no goods or effects of the said John Horner were in the hands of the said James E. Breading, garnishee, at the time of the execution or service of said last-mentioned execution attachment, or afterwards up to the time of the rendition of said verdict; that afterwards, after the last continuance of this cause, to wit, on the first day of March, A. D. 1857, judgment was rendered by said court in favour of said Breading, garnishee, defendant, on said verdict, and that since the rendition of said verdict, no moneys, goods, or effects of said John Horner have come to the hands or possession of said James E. Breading, garnishee, as aforesaid.

And it is further agreed, that if the said court shall be of opinion that the facts aforesaid constitute a legal defence to the further maintenance of the said suit or proceeding, in which said Siegworth is plaintiff, and said Breading, garnishee as aforesaid, is defendant, then and in that event judgment shall be rendered therein by said court in favour of said Breading, garnishee, defendant; but if the court shall be of opinion that the facts aforesaid do not constitute a legal defence to the further maintenance of said suit or proceeding, then, and in that event, judgment shall be entered therein in favour of said plaintiff against said defendant, garnishee, for the sum of $200; and it is further agreed, that either party may sue out a writ of error upon the judgment of said District Court.

The court below entered judgment on the case stated in favour of the plaintiff for the sum of $200.

To reverse which judgment the garnishee brought this writ, assigning the action of the court for error.

*A. W. Loomis,* for plaintiff in error, contended that an issue tried in attachment execution was a proceeding *in rem,* and as such conclusive on all the world. The 35th section of the Act

[Breading, Garnishee, *v.* Siegworth.]

June 1836, regulating attachments, provides that goods or chattels, pawned, pledged, or demised, may be attached and levied in satisfaction of the judgment, *in the manner allowed in the case of foreign attachment.* The 58th section, in relation to actions under the head of foreign attachment, provides that, if issue be taken, and a trial had upon any *scire facias,* the "jury shall find what goods or effects, if any, were in the hands of the garnishee at the time the attachment was executed, or afterwards, and also the value thereof." This contemplates a single finding, and not a separate issue and trial, in every attachment that may be issued. Such was the case here. It was tried on the comprehensive issue of *nulla bona.* That verdict was upon the precise point involved here. It finds no goods or effects were in his hands at the rendition of the verdict. This case admits he has received none since. The learned counsel cited and relied upon Geltston *v.* Hoyt, 3 *Wheat. Rep.* 246; 1 *Green. Ev.* § 541; Phelps *v.* Holker, 1 *Dall. Rep.* 261; Fitch *v.* Ross, 4 *S. & R.* 563; Kilbam *v.* Woodsworth, 5 *John. Rep.* 40; Hampton *v.* Matthews, 2 *Harris* 106; Gochenaur *v.* Hostetter, 6 *Id.* 418.

*Shinn* and *J. E. Brady,* for defendant in error.—To make a former verdict and judgment conclusive, it must be between the same parties. The party must have had a right to appear and be heard: *Stark. Ev.* part 2, §§ 57 and 60; 1 *Green. Ev.* §§ 523–528; Hart's Appeal, 8 *Barr* 37; Carmach *v.* The Commonwealth, 5 *Binn.* 184; Respublica *v.* Davis, 3 *Yeates* 128.

The section 541, cited from 1 *Green. Ev.* by the gentleman, applies to foreign judgments *in rem* against vessels, and concludes that the parties in interest *in rem* must have had notice, or an opportunity to appear and defend: *Id.* 542, and cases there cited.

Geltston *v.* Hoyt, 3 *Wheat.* 246, was an action of trespass; and, although Mr. J. STORY discusses the force of a judgment *in rem,* it was not a question passed upon by the court. In none of the cases cited was it authoritatively settled that a proceeding by attachment was a proceeding *in rem.*

The case of Childs *v.* Digby, 12 *Harris* 23, decides that the attachment is a proceeding *in rem,* but also something more, a proceeding against the garnishee personally.

The action of ejectment, a verdict and judgment on the same title for the same land, is not binding on those who are not parties or privies: 1 *Stark. Ev.* part 2, § 60; Timbers *v.* Kutz, 6 *W. & S.* 290; Brutton *v.* Mitchell, 3 *Barr* 49; Hurst *v.* McNeill, 1 *W. C. C. R.* 70. Siegworth is entitled to his day in court, and to have his cause submitted to a jury.

The opinion of the court was delivered by

ARMSTRONG, J.—The question presented by the case stated is,

[Breading, Garnishee, *v.* Siegworth.]

whether the verdict and judgment on the execution attachment of Faber against Breading in favour of defendant, is a bar to a recovery in the attachment of Siegworth against Breading, subsequently issued.

The 35th section of the Act of the 16th of June, 1836, regulating execution attachments, provides that, "in case of a debt due to the defendant, or of a deposit of money made by him, or of goods or chattels pawned, pledged, or demised, the same may be attached and levied in satisfaction of the judgment, in the manner allowed in the case of foreign attachment." The object of this act was to reach the means of a debtor wherever they might be, whether placed in the hands of others to screen them from creditors or otherwise, and to apply them to the payment of his debts. A garnishee, with property in his possession, may admit the fact, and he will be liable only according to the truth of his admission; and if he deny the fact, he will be liable to the extent of the proof. It is insisted that this is a proceeding *in rem*, and that the jury, in Faber's attachment, having found in favour of defendant, that he had no goods or effects of Horner in hand when that cause was tried, it is, whatever may be the truth of the case, a bar to the recovery of the plaintiff in this suit; and that the facts cannot again be contested by any creditor in another action.

In Childs & Co. *v.* Digby, 12 *Harris* 23, Chief Justice Lewis remarks: "It is true that the attachment process is a proceeding *in rem*, but it is equally true that it is something more. It is also a proceeding against the garnishee *personally*, for the purpose of compelling him to answer for the value where the thing itself is not produced. The summons, the judgment, and execution contain the bones and sinews of a proceeding *in personam* against the garnishee." From this it is clear that the execution attachment is not solely a proceeding *in rem*. Yet the defendant's counsel must maintain this, or fail in the position assumed. But another difficulty stands in his way. A former verdict and judgment for the same cause of action may conclude the parties, but it is not conclusive on third parties or strangers. What right had Siegworth to meddle with the suit of Faber against Breading? He was no party to it, and it would have been against his interest to have procured evidence of property in the hands of the garnishee, which must enure to the benefit of an older attaching creditor. He could not join in the same suit with Faber, for they were not joint creditors of Horner, and they had no interest in common. The claim of Faber and that of Siegworth were for different sums. A joint judgment would be erroneous, and separate judgments for their respective claims in the same suit would be equally so. If the execution attachment was so strictly a pro-

[Breading, Garnishee, *v.* Siegworth.]

ceeding *in rem*, that it affected the *thing* only, and bore no relation to the person, the argument of the counsel for the defendant would not be without its effect. But it is not, and therefore the cases cited have not the force and application that are asked for them. It is urged that "it would be calamitous in the extreme, in some instances utterly ruinous, to citizens who might be so unfortunate as to be overwhelmed by a multitude of execution attachments." The hardship of this may be readily admitted, when we consider that as between a creditor and his debtor, who might be made a garnishee, the costs of one suit only would follow. Every general law, however, and every general rule, will occasionally produce individual hardship. But the hardship must sometimes yield to the policy of the law, which has for its object the general good. If a garnishee with money or goods in hands is ready to pay or give up the property to those entitled, when legally called on, he ought not to be liable personally for costs, for until then he cannot know who the attaching creditor may be, and his own immediate creditor might have been unwilling to sue. If he denies, and on the issue of *nulla bona* it is found against him, he has no right to complain. That several attachments may properly issue against the same garnishee, may be readily illustrated. Suppose him to have in his hand $1000, and the debt due the first attaching creditor be only $100, surely any number of creditors might subsequently attach till the fund was exhausted, otherwise the law would prove abortive. Any other construction would tend to promote fraud and collusion, which the object of the law is to prevent. It requires no great expansion of thought to suppose that designing parties might easily raise an attaching creditor, whose desire would not be to favour his own success, but to insure a verdict for defendant; a result which, upon the construction asked for, would bar the right of every other creditor, and leave the parties in the enjoyment of their fraudulently concealed means. In the present case, the verdict and judgment in favour of Breading in the attachment of Faber, is no bar to the recovery of Siegworth.

Judgment affirmed.